UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GS HOLISTIC, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PUFF LOUNGE LLC D/B/A ROYAL FLAME TOBACCO, et al.,<br><br>Defendants. | Case No.  1:22-cv-1498-BAM<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. 15)<br><br>**FOURTEEN (14) DAY DEADLINE** |

On April 9, 2023, Plaintiff GS Holistic, LLC filed a motion for default judgment against Defendants Puff Lounge LLC d/b/a Royal Flame Tobacco ("Defendant Puff Lounge LLC") and Manuel Robertson ("Defendant Robertson") (collectively, "Defendants").  (Doc. 15.)  No opposition was filed.  The motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing set for May 19, 2023, was previously vacated.  (Doc.16.)

Having considered the moving papers and the record in this action, the Court

1

RECOMMENDS that Plaintiff's motion for default judgment be GRANTED in part as herein detailed.

**I.  FACTUAL BACKGROUND**

On November 17, 2022, Plaintiff filed this action for Federal Trademark counterfeiting and infringement pursuant to 15 U.S.C. § 1114 and federal false designation of origin and unfair competition pursuant to 15 U.S.C. § 1125(a).  (Doc. 1, ¶¶ 53-70.)

Plaintiff alleges that it is the owner of the "Stündenglass" trademarks and has spent significant amounts of time and resources promoting and protecting the trademark.  (*Id.* ¶¶ 5, 10-11, 15, 17.)  Plaintiff notes that it is the registered owner of three trademarks: (1) U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011; (2) U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034; and (3) U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034).  (*Id.* ¶ 11.)  Plaintiff asserts that Defendants sold counterfeit goods bearing the "Stündenglass" mark.  (*Id.* ¶ 26-29.)  Specifically, Plaintiff alleges that its investigator purchased a counterfeit Glass Infuser with an infringing Stündenglass Mark affixed to it, from Defendant Puff Lounge LLC.  (*Id.* ¶ 31.)  Plaintiff's complaint seeks damages, costs, declaratory relief, and injunctive relief.  (*Id.* at 13-14.)

On February 1, 2023, Plaintiff served Defendant Puff Lounge LLC by leaving a copy of the summons, notice, and complaint with the Manager on Duty at 3848 McHenry Ave, Ste 365, Modesto, CA 95356.  (Doc. 6 at 1.)  The process server marked that the manager was apparently in charge of the office or usual place of business of the person being served and that copies of the summons, notice, and complaint were subsequently mailed to Defendant Puff Lounge LLC at 3848 McHenry Ave, Ste 365, Modesto, CA 95356.  (*Id.*)  On February 6, 2023, Plaintiff served Defendant Robertson with the summons, notice, and complaint via personal service.  (Doc. 7 at 1.)

///

**II.     LEGAL STANDARD FOR DEFAULT JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant who has failed to plead or otherwise defend against the action.  Fed. R. Civ. P. 55(b)(2).  "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).

**III.    DISCUSSION**

    **A. Service of Process**

In deciding whether to grant or deny a default judgment, a court should assess the adequacy of the service of process on the party against whom default is requested.  *See, e.g., Trujillo v. Harsarb, Inc.*, No. 1:21-cv-00342-NONE-SAB, 2021 WL 3783388 at *4 (E.D. Cal. Aug. 26, 2021) ("As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment."); *Coach, Inc. v. Diva Shoes & Accessories*, No. 10-5151 SC, 2011 WL 1483436 at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v. Check Resolution Service, Inc.*, No. 1:10-cv-00716 AWI GSA, 2010 WL 5200912 at *2 (E.D. Cal. Dec. 15, 2010).

<u>Individual Defendant Manuel Robertson</u>

Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States.  An individual may be served by:

    (1) following state law for serving a summons in an action brought in courts of

3

general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

    (A) delivering a copy of the summons and of the complaint to the individual personally;

    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

According to the proof of service on file, Defendant Manuel Robertson was served a copy of the summons, notice, and complaint personally on February 6, 2023. (Doc. 7 at 1.) The Court therefore finds that Plaintiff properly served Defendant Robertson pursuant to Federal Rule of Civil Procedure 4(e)(2).

<u>Entity Defendant Puff Lounge LLC d/b/a Royal Flame Tobacco</u>

Rule 4 also sets forth the requirements for serving a corporation, partnership, or association within a judicial district of the United States. Pursuant to Rule 4(h), a domestic corporation, or a partnership or other unincorporated association that is subject to suit under a common name, may be served by following state law for service of a summons on an individual or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and… by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). Under California law, a summons may be served by "by delivering a copy of the summons and the complaint" to the "president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code § 416.10(b).

According to the proof of service on file, a copy of the summons, notice, and complaint was delivered to a manager on duty at the address 3848 McHenry Ave, Ste 365, Modesto, CA 95356. (Doc. 6 at 1.) In the proof of service, the process server noted that the manager on duty

4

identified himself as the manager and indicated that he was authorized to accept service. (*Id.*) The process server subsequently mailed copies of the summons, notice, and complaint to Defendant Puff Lounge LLC at 3848 McHenry Ave, Ste 365, Modesto, CA 95356. (*Id.*) The Court therefore finds that Plaintiff properly served Defendant Puff Lounge LLC pursuant to Federal Rule of Civil Procedure 4(h) and California law.

**C. The *Eitel* Factors Weigh in Favor of Default Judgment**

The Court finds consideration of the *Eitel* factors weigh in favor of granting default judgment in favor of Plaintiff as to Defendants Manuel Robertson and Puff Lounge LLC.

1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment were not entered. *See PepsiCo, Inc.,* 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. *Id.; Moroccanoil, Inc. v. Allstate Beauty Prods*., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Here, default has been entered (Docs. 11-12) and the Court finds Plaintiff would be prejudiced if default judgment were not granted. This factor weighs in favor of default judgment.

2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir. 2007).

In Plaintiff's complaint, Plaintiff alleges: (1) Federal Trademark Counterfeiting and Infringement pursuant to 15 U.S.C. § 1114; and (2) Federal False Designation of Origin and Unfair Competition pursuant to 15 U.S.C. § 1125(a). (Doc. 1 ¶¶ 53-70.).

a. Trademark Counterfeiting and Infringement

To show liability for trademark infringement, the trademark holder must demonstrate: (1) "ownership of a valid mark (i.e., a protectable interest)"; and (2) the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive" consumers. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (quoting *KP Permanent*

5

*Make-Up, Inc. v. Lasting Impression I, Inc*., 408 F.3d 596, 602 (9th Cir. 2005)).  On the first element of ownership, "[r]egistration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration… When proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).  Here, Plaintiff satisfies the first element by alleging ownership of three valid registered trademarks.  (Doc. 1 ¶¶ 11-12.).

On the second element of confusion or deception, "[l]ikelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *KP Permanent Make-Up, Inc*., 408 F.3d at 608.  An eight-factor test is typically used to determine whether confusion is likely. *Id.* This test consists of examining: "1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets." *Id.*

Here, the mark appears to be relatively strong based upon Plaintiff's allegations.  *See* (Doc. 1 ¶ 16) ("GS's Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs."); (Doc. 1 ¶ 20) ("GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in California. GS has approximately 3,000 authorized stores in the United States selling its products."); (Doc. 15-3 ¶¶ 9-10.) Additionally, the goods appear closely related given both Defendants' and Plaintiff's sale of infusers, and the marks appear very similar as Plaintiff alleges that the glass infuser sold by Defendants had a Stündenglass mark affixed.  (Doc. 1 ¶¶ 20-21, 30-31.)  Furthermore, actual confusion and Defendants' intent to confuse by selecting the mark can be inferred by the Stündenglass mark affixed and the similar price point. (*Id.* ¶ 21, 30-31.)  However, likelihood of expansion into other markets is not clear, as Plaintiff's investigator purchased a single infuser from Defendants. (*Id.* ¶ 30-31.)  Additionally, though Plaintiff has demonstrated it is the owner of three

1    trademarks, Plaintiff's Complaint refers to a single Infringing Mark and Plaintiff only alleges that
2    "inspection of the purchased item confirmed that the Glass Infuser ROYAL FLAME TOBACCO
3    sold to GS's investigator was a Counterfeit Good with an Infringing Mark affixed to it." (*Id.* ¶ 31.);
4    (*Id.* ¶¶ 36-41) (Referring to Defendant Puff Lounge LLC as distributing and selling goods with an
5    "Infringing Mark"). While Plaintiff alleges in its motion for default judgment that Defendant "did
6    sell a glass infuser with three (3) fake Stündenglass Marks," this information is not in the supporting
7    documents or complaint. (Doc. 15 at 8.) Accordingly, the factors weigh in favor of the second
8    element being met, but only as to one of Plaintiff's registered marks. Plaintiff has therefore stated
9    a trademark infringement claim on which they may recover.

           b.   False Designation of Origin

11   The Ninth Circuit has held that to be liable "under § 1125(a), a person must (1) use in
12   commerce (2) any word, false designation of origin, false or misleading description, or
13   representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of
14   his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th
15   Cir. 2007). As to the first two elements, Plaintiff alleges that Defendant sold at least one glass
16   infuser bearing Plaintiff's registered trademark. (Doc. 1 ¶¶ 30-31.) As to whether this is "likely to
17   cause confusion," this can be inferred by the similarity and proximity of Plaintiff's glass infusers
18   to the glass infuser sold by Defendants with the affixed Stündenglass mark, similar price point, and
19   relatively success of Plaintiff's glass infusers. (Doc. 1 ¶ 16, 20-21, 30-31.); (Doc. 15-3 ¶¶ 9-10.)
20   Accordingly, Plaintiff has stated a false designation claim on which they may recover, and the
21   second and third *Eitel* factors weigh in favor of default judgment.

           3.   The Sum of Money at Stake in the Action

23   Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at
24   stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.,* 238 F. Supp. 2d at
25   1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal.
26   2003).
27   Here, Plaintiff seeks $150,000 in statutory damages and $920.61 in costs. (Doc. 15 at 6-
28   10.) While the remedies analysis below further discusses the statutory damages, the statutory

7

damages and costs do not seem unreasonable in light of the infringement and false designation at issue, and do not weigh against entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

Following the Clerk's entry of default, the Court may assume the truth of well-pled facts in the complaint and, thus, there is no likelihood that any genuine issue of material fact exists. *See, e.g., Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Further, Defendants' failure to file an answer in this case or a response to the instant motion supports the conclusion that the possibility of a dispute as to material facts is minimal. This factor therefore weighs in favor of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendants' default resulted from excusable neglect. *PepsiCo, Inc.,* 238 F. Supp. 2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Upon review of the record, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. As discussed above, Defendants were properly served with the complaint and the motion for default judgment, which included notification of the Clerk's entry of default. (*See* Docs. 6, 7, 10, 11, 12, 15.) Despite service, Defendants have not appeared. Thus, the record suggests that Defendants have chosen not to participate in this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.

8

*PepsiCo, Inc.,* 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendants have not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

**D. Damages**

1. <u>Injunctive Relief</u>

Plaintiff's complaint and proposed judgment include a preliminary and permanent injunction against Defendant Puff Lounge LLC. (Doc. 1 at 13-14.) However, Plaintiff's Motion for Default Judgment does not address injunctive relief. As such, Plaintiff has not met its burden for injunction, particularly the requirement of actual, irreparable harm. *See adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756–57, 759–61 (9th Cir. 2018).

Accordingly, the Court cannot recommend issuance of injunctive relief.

2. <u>Statutory Damages</u>

Plaintiff seeks statutory damages in the amount of $150,000.00. The Lanham Act authorizes awards of statutory damages, "as the court considers just," of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). The Lanham Act further authorizes awards of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" if the court "finds that the use of the counterfeit mark was willful." *Id.* The Court has discretion to award statutory damages between the minimum and maximum, so long as they are sufficient to deter future trademark infringement. *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274–75 (9th Cir. 1982) (cautioning against permitting a situation in which "the counterfeiter escapes without suffering the economic harm necessary to serve as a deterrent to future infringing activities."); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (explaining, in related context of copyright infringement, that statutory damages further "compensatory and punitive purposes").

"In determining the appropriate amount of statutory damages to award on default

1  judgment," district courts "have considered whether the amount of damages requested bears a
2  'plausible relationship to Plaintiff's actual damages.'" *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082,
3  1102, 1104 (N.D. Cal. 2014) (awarding $45,000 in statutory damages where plaintiff had
4  requested $2,000,000); *Adobe Sys., Inc. v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5-6
5  (N.D. Cal. Jan. 19, 2010) (awarding $50,000 for infringement of five trademarks where Plaintiff
6  had requested $250,000 in statutory damages). "While a plaintiff in a trademark or copyright
7  infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a
8  windfall." *Id* at 1102, 1104.  "Where a plaintiff cannot reasonably estimate actual damages, and
9  especially where it shows only a few sales related to the counterfeit mark, courts are disinclined
10 to award the maximum statutory damages at the risk of a windfall." *GS Holistic, LLC v. MSA-
11 Bossy Inc.*, No. 22-CV-07638-JSC, 2023 WL 3604322, at *5 (N.D. Cal. May 22, 2023); *Yelp*, 70
12 F. Supp. 3d at 1103 (one sale); Adobe, 2010 WL 309249, at *4 (one sale); *Microsoft Corp. v.
13 Ricketts*, No. C 06–06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2005) (three
14 sales).

15     Here, Plaintiff requests $150,000.00 but has only alleged one sale of an infringing product
16 to Plaintiff's investigator.  (Doc. 1 ¶¶ 20-21, 30-31.)  Plaintiff's Complaint also only alleges that
17 Defendants' products included a single "Infringing Mark" rather than infringement of all three of
18 its registered trademarks.  (*Id*. ¶¶ 31, 36-41.)  Plaintiff's attempts to establish a larger amount in
19 actual damages beyond the $323.61 that the infringing infuser sold for are similarly conclusory,
20 pointing only to an affidavit by Plaintiff's CEO stating that sales of the Stundenglass product were
21 $9,600,000.00 in 2021 but would have been $38,400,000.00 without the "flood of inferior, mass-
22 produced fake Stundenglass products." (Doc. 15-3 ¶¶ 15-16.)  Mindful of the need to deter future
23 trademark infringement while also not risking a windfall, the Court finds that an award of $2,000
24 is just. *See* 15 U.S.C. § 1117(c).  This is above the statutory minimum for trademark infringement,
25 represents more than fifteen times the price of the only sale at issue, and serves a deterrent purpose
26 while avoiding a windfall.

27     Accordingly, the Court recommends an award of $2,000.00 in statutory damages.

28         3.  <u>Litigation Expenses and Costs</u>

Plaintiff also seeks an award of costs but does not seek attorneys' fees. The Lanham Act authorizes the Court to, "subject to the principles of equity," award "costs of the action" to a plaintiff who establishes a trademark violation. 15 U.S.C. § 1117(a).

Here, Plaintiff seeks $920.61, consisting of the filing fee ($402.00), the process server fee ($130.00), and Plaintiff's investigation fees ($388.61). (Doc. 15-5 ¶ 6.) Filing and service of process expenses are reasonable and routinely awarded. *See, e.g.*, *Facebook, Inc. v. Sahinturk*, No. 20-CV-08153-JSC, 2022 WL 2239841, at *2 (N.D. Cal. June 17, 2022) (filing fees and service costs found reasonable in Lanham Act action); *3M Co. v. G7 Env't, LLC*, No. CV 20-8892 PA-AFMX, 2021 WL 2935659, at *10 (C.D. Cal. June 9, 2021) (filing fee and process server cost found reasonable in Lanham Act action); *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1095 (N.D. Cal. 2008) (filing fee and process server costs found reasonable and awarded in trademark action).

However, Plaintiff does not cite any authority for shifting the cost of pre-suit investigation to Defendants. The plain language "the costs of the action," 15 U.S.C. § 1117(a), is limited to costs incurred after "the action"—the court case—has begun. See *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) ("Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized [from oral interpretation to document translation]."); *Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (applying *Taniguchi* and noting that "the better course is to hew closely to the statute's language, scheme, and context, recognizing that [the statute at issue] is narrow, limited, and modest in scope.").

Accordingly, the Court recommends that plaintiff be awarded the sum of $532.00 for litigation expenses and costs.

**IV.     CONCLUSION AND RECOMMENDATION**

The Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Further, based on the foregoing, the Court HEREBY RECOMMENDS as follows:

1.     Plaintiff's motion for default judgment be GRANTED IN PART as to Defendants

11

Puff Lounge LLC d/b/a Royal Flame Tobacco and Manuel Robertson.

2. Pursuant to Federal Rule of Civil Procedure 54(b), the Court determines that there is no just reason to delay entry of judgment.

3. Judgment be entered in Plaintiff's favor and against Defendants Puff Lounge LLC d/b/a Royal Flame Tobacco and Manuel Robertson in the amount of $2,532.00, consisting of: statutory damages in the amount of $2,000.00 and costs of suit in the amount of $532.00;

4. Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the Defendants at that Defendant's last known address.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 14, 2023**                          /s/ *Barbara A. McAuliffe*
                                             UNITED STATES MAGISTRATE JUDGE